Priority    _____
Send    _____
Enter    _____
Closed    _____
JS-5/JS-6    _____
Scan Only    _____

---

**CASE NO.:** <u>CV 18-01163 SJO (FFM)</u>       **DATE:** <u>August 8, 2018</u>

**TITLE:**    <u>Ricardo Vergel De Dios v. Gerard Roof Products, LLC. et al</u>
========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

| Victor Paul Cruz | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFF:**    **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION TO REMAND**
[Docket No. 18]

This matter is before the Court on Plaintiff Ricardo Vergel De Dios' ("Plaintiff") Motion to Remand Action to State Court ("Motion") filed on June 29, 2018. Defendants Gerard Roof Products, LLC., Boral Roofing, LLC., Boral Industries, Inc., Headwaters Incorporated, and Metrotile Manufacturing, LLC. (collectively, "Defendants") filed an opposition to the Motion ("Opposition") on July 9, 2018. Plaintiff replied ("Reply") on July 16, 2018. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for July 30, 2018. *See* Fed R. Civ P. 78(b). For the following reasons, the Court **DENIES** Plaintiff's Motion.

I.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On April 19, 2018, Plaintiff initiated the instant class action against Defendants in the San Bernardino County Superior Court. (*See generally* Notice of Removal ("Notice"), Ex. A, Compl. ("Complaint"), ECF No. 1-1.)[1] Plaintiff alleges the following seven causes of action: (1) Failure to Pay Minimum Wages; (2)Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay All Wages Due Upon Separation of Employment; and (7) Violation of Business and Professions Code §§ 17200, *et seq.* (*See generally* Compl.)

Plaintiff alleges the following in the Complaint. Defendants are in the business of designing and manufacturing roofing products in California. (Compl. ¶ 2.) Defendants have engaged in a systematic pattern of wage and hour violations under the California Labor Code and Industrial

---

[1] Plaintiff filed a First Amended Complaint ("FAC", ECF No. 17) in this Court on June 25, 2018. The FAC alleges the same seven causes of action as the Complaint. However, "the general rule is that 'the amount in controversy is determined from the pleadings as they exist at the time a petition for removal is filed.'" *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1237 (9th Cir. 2014). Thus the Court will refer to the original Complaint in its ruling.

**CASE NO.:**  CV 18-01163 SJO (FFM)          **DATE:** August 8, 2018

Welfare Commission Wage Orders.  (Compl. ¶ 3.)  Plaintiff brought the current action on behalf of himself and all others similarly situated who were affected by Defendants' wage and hour violations. (Compl. ¶ 18.) Plaintiff and putative class members ("PCMs") did not receive all wages earned for all hours worked (including minimum wage and overtime wages), did not receive all meal periods, did not receive all rest periods, were not provided with accurate itemized wage statements, and did not receive payment of all wages within permissible time periods.  (Compl. ¶¶ 29-33.) The Class in the action is defined as all California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California within four years prior to the filing of the action.  (Compl. ¶ 20.)  The class is estimated to be greater than one hundred individuals, and their identities are readily ascertainable by inspection of Defendants' employment and payroll records.  (Compl. ¶ 21.)  Plaintiff now seeks, among other damages, compensatory and economic or special damages in an amount according to proof at trial.  (*See* Compl. 18-19.)

Defendants removed the case to this Court on May 30, 2018 citing the Class Action Fairness Act ("CAFA") 28 U.S.C. §§ 1332(d), 1453, and 1711-15 for the Court's original jurisdiction.  (Not. ¶ 6.) Plaintiff now seeks to remand the case arguing that Defendants have failed to meet their burden to prove that the amount in controversy ("AIC") exceeds $5,000,000 as required by CAFA.  (Mot. 2.)

II.     DISCUSSION

        A.      Legal Standard for Remand

Any civil action over which the district courts of the United States have original jurisdiction may be removed to the district court of the United States for the district where such action is pending.  28 U.S.C. § 1441(a).  In 2005, Congress enacted the Class Action Fairness Act of 2005, which gives district courts, "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. § 1332(d)(2)(A).   There is no antiremoval presumption in CAFA cases.  *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 554 (2014).  A defendant seeking to remove a case to federal court must file a notice of removal containing a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  The notice of removal must include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1195 (9th Cir. 2015).  When the defendant's AIC allegation is not contested, it should be accepted.  *See Dart Cherokee*, 135 S. Ct. at 553. However, when the AIC is contested, both sides must submit proof and the Court must decide, by a preponderance of the evidence, if the AIC requirement has been satisfied.  *Ibarra,* 775 F.3d at 1195.

Here, the parties do not dispute that Plaintiff's class is larger than 100 members and that there is minimum diversity between the parties as required by § 1332(d)(2).  Thus, the only issue before the Court is whether Defendants have demonstrated that the AIC exceeds $5,000,000.

**CASE NO.:**   <u>CV 18-01163 SJO (FFM)</u>        **DATE:** <u>August 8, 2018</u>

B.      <u>Legal Standard for Amount in Controversy</u>

"In determining the amount in controversy, courts first look to the complaint."  *Id.* at 1197.  The Court may also consider supplemental evidence brought later by Defendant which was not originally included in the removal notice.  *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n. 1 (9th Cir. 2002).  When the damages are unstated in the Complaint, the defendant seeking removal must establish by a preponderance of the evidence  that the aggregate AIC exceeds $5,000,000.  *Hughes v. Fosdick*, 106 F. Supp. 3d 1078, 1081 (N.D. Cal. 2015).  An assessment of the AIC may be based on reasonable assumptions.  *See Ibarra,*775 F.3d at 1199.  The defendant has the burden to persuade the Court that "the estimate of damages in controversy is a reasonable one."  *Id.* at 1197.

C.      <u>Analysis</u>

1.      <u>Meal and Rest Break Violation Claims</u>

California's Labor Code mandates that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . . An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."  Cal. Lab. Code § 512 (a).  "If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."  Cal. Lab. Code § 226.7(c).  Plaintiff alleges that during the relevant time, Plaintiff and the PCMs did not receive compliant meal periods for working more than five and/or ten hours per day.  (Compl. ¶ 61.)  Accordingly, Plaintiff seeks monetary relief against Defendants on behalf of himself and others similarly situated.  (Compl. ¶ 5.)

Defendants assert that the AIC for the alleged meal break violations totals $3,007,764.  (Opp'n 9.)  In support of their Opposition, Defendants offer the declaration of Christina Clark, Defendants' payroll manager.  In her capacity as payroll manager, Ms. Clark "caused Defendants' timekeeping, payroll and employment data for Plaintiff and other current and former non-exempt employees to be reviewed."  (Opp'n, Ex. 2, Christina Clark Declaration ("Clark Decl.") ¶ 2.)  An analysis of Defendants' payroll data showed that from April 2014 to April 2018, the relevant four years before the Complaint was filed, the PCMs worked an aggregate of 151,296 days where there was at least one facial meal period violation.  (Clark Decl. ¶ 12.)  The analysis also showed that the PCMs were paid an average regular hourly rate of $19.88 during those preceding four years.  (Clark Decl. ¶ 12.) This figure was calculated by dividing the total regular, non-overtime and non-double time wages paid to PCMs by the total regular, non-overtime and non-double time hours paid during the same preceding four years.  (Clark Decl. ¶ 12 n.2.)  Using the PCMs' average hourly

CASE NO.:  CV 18-01163 SJO (FFM)          DATE: August 8, 2018

wage is a useful metric for determining the total AIC and so this methodology is reasonable under the context.  *See Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *5 (C.D. Cal. Apr. 28, 2015).

Based on these data points, Defendants calculate the AIC by multiplying the days worked with facial meal violations (151,296) by the average hourly rate ($19.88) and assert that the AIC for the Plaintiff's meal violation claim is at least $3,007,764.  (Opp'n 9.)  Since Ms. Clark has access to Defendants' personnel and payroll records, and the records include the actual work schedules, timekeeping data, and payroll records for PCMs, Defendants based their calculations on concrete figures from their actual business records. Accordingly, their calculations are reasonable for the purposes of calculating the AIC for meal break violations.

Furthermore, based on the allegations from the Plaintiff's Complaint, Defendants argue that it would be reasonable to assume that the PCMs experienced rest break violations on the same number of days that reflect a facial meal break violation.  (Opp'n 9 n. 7.)  The Court has previously held that assuming an 100% violation rate is "proper when the plaintiff's complaint alleges that the defendant always engages in labor violations."  *Sanchez*, 2015 WL 12765359, at *5 (C.D. Cal. Apr. 28, 2015); *see also Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 WL 2199645, at *1 (N.D. Cal. May 27, 2014)(finding that a 100% violation rate was proper when the plaintiff alleged "consistent and universal meal period violations".)

Here, Plaintiff alleges that Defendants "systematically engaged in unlawful conduct . . . [such as] failing to provide meal periods and rest breaks or compensation in lieu thereof."  (Compl. ¶ 89.)  Plaintiff further alleges that "[d]uring the relevant time period, Plaintiff and Class Members . . . were required to work through their **daily** rest periods and/or were not authorized to take their rest periods."  (Compl. ¶ 68) (emphasis added.)  Alleging that Plaintiff and the PCMs were required to work through their **daily** rest periods is the same as alleging that the Defendants always engaged in labor violations since California Labor Code prohibits any employer from requiring an employee to work during a rest period.  Cal. Lab. Code § 226.7(b).  Accordingly, it would be proper for Defendants to use an 100% violation rate to calculate the AIC for Plaintiff's alleged rest break violations and assume that employees were deprived of at least one rest period every day they worked during the relevant time period.  *See Sanchez*, 2015 WL 12765359, at *5 (C.D. Cal. Apr. 28, 2015).

However, Defendants use a more conservative figure to calculate the AIC for the alleged rest break violations.  Instead of using the full 239,791 days that the PCMs worked during the four year relevant time period, Defendants only use 151,296 days, the same number of days as for the alleged meal break violations, for their calculations.  (Clark Decl. ¶ 12.)  Defendants thus use a more conservative 63% violation rate to calculate the AIC for the alleged rest break violations. Plaintiff, on the other hand, does not offer an alternative rate of violation.  *(See generally* Not.; *see also generally* Reply.)  Instead, Plaintiff merely argues that since rest periods are shorter in time than meal periods, it is likely that employees were able to take rest periods more frequently than

**CASE NO.:**  CV 18-01163 SJO (FFM)          **DATE:** August 8, 2018

they were able to take full meal periods.  (Reply 3.)  However, not only does that assertion contradict the allegation that PCMs were required to work through their daily rest periods, but Plaintiff offers no evidence to support the assumption.  The Court finds that it is reasonable for Defendants to assume a 63% violation rate based on these circumstances.

Defendants then calculate the rest period violation AIC by multiplying 151,296 work days by the aforementioned $19.88 average hourly wage and assert that the AIC for the Plaintiff's meal violation claim is $3,007,764.  (Opp'n 9.)  Adding together the$3,007,764 AIC for the alleged meal break violations to this $3,007,764 AIC for the alleged rest break violations, the total comes to $6,015,528.   (Opp'n 9.)  Since these calculations are based on reasonable assumptions, the Court finds the Defendant has met their burden to establish that it is more likely than not the aggregate AIC exceeds $5,000,000 based on these two claims alone.  Consequently, the Court need not address the amounts in controversy for the Plaintiffs other California Labor Code violation claims or attorney's fees.

III.    RULING

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand.

IT IS SO ORDERED.

___:___

Initials of Preparer: SMO